UNITED STATES DISTRICT COURT                    FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK

---

CHRISTOPHER BROWN,

                                    Plaintiff,              MEMORANDUM
                                                            AND ORDER

                - versus -                                  12-CV-317

SERVICES FOR THE UNDERSERVED,

                                    Defendant.

---

A P P E A R A N C E S

        CHRISTOPHER BROWN
                476 Richmond Terrace, Apartment 7J
                Staten Island, New York 10301
                *Plaintiff* Pro Se

        CLIFTON BUDD & DEMARIA, LLP
                420 Lexington Avenue, Suite 420
                New York, New York 10170
        By:     Stefanie Robin Munsky
                *Attorney for Defendant*


JOHN GLEESON, United States District Judge:

        On January 18, 2012, Christopher Brown, proceeding *pro se*, filed an *in forma

pauperis* ("IFP") action against Services for the Underserved ("SUS"), alleging gender

discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et

seq.*  By Order dated February 2, 2012, I *sua sponte* dismissed the complaint without prejudice

for failure to state a plausible claim, pursuant to 28 U.S.C. § 1915(e)(2)(B), and granted 30 days'

leave to replead.  On March 2, 2012, Brown filed an amended complaint, and I granted IFP

status.  SUS now moves to compel arbitration or, in the alternative, to dismiss the amended

complaint.  For the reasons that follow, I deny the motion to compel arbitration and grant the

motion to dismiss.

BACKGROUND

According to the amended complaint, Brown began his employment with SUS in January of 2009.  Am. Compl. at 4.  Brown served as a case manager in a SUS residential program for clients with mental health needs.  *Id.* at 4, 6.  Brown was a model employee and, for the first several months after he was hired, received high performance reviews.  *Id.* at 4, 8-12. However, during a staff meeting in October of 2009, he questioned his supervisor, Residential Director Jeanette Donaldson, about imposing a curfew for the residents.  *Id.* at 6.  After that incident, Brown became the subject of a series of increasingly severe disciplinary actions, including write-ups and, ultimately, termination.  *Id.* at 6-7, 13-15.

The discipline to which Brown was subject was unjustified, and female employees who performed in ways similar to Brown were not disciplined.  *Id.* at 6-7.  For example, shortly after the staff-meeting dispute, Donaldson issued Brown a write-up for improper client documentation.  *Id.* at 6-7, 13.  However, Donaldson did not discipline female employees who also failed to maintain proper client documentation.  *Id.* at 6-7. Brown was ultimately terminated on May 24 or 28, 2010, for psychologically abusing a resident.  *Id.* at 7, 20-21.  He contends that SUS discharged him because of his gender and retaliated against him in violation of Title VII.

DISCUSSION

A.     *The Motion to Compel Arbitration*

SUS moves to dismiss for lack of subject matter jurisdiction on the ground that Brown agreed to arbitrate his discrimination claims.  I construe SUS's motion as a motion to compel arbitration.

During his employment with SUS, Brown was a member of the United Service Workers Union (the "Union"), which signed a collective bargaining agreement ("CBA") with SUS.  Under the CBA, the Union agreed to arbitrate discrimination claims that arose in the workplace.  Specifically, Article 19A of the CBA states:

> MANDATORY ARBITRATION OF ALL CLAIMS
>
> 1. There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, retaliation, whistleblowing, or any characteristic protected by law, including, but not limited to claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, the New York City Human Rights Code, New York Labor Law § 740 or 741, or any other similar laws, rules or regulations.  All such claims shall be subject to the grievance and arbitration procedure set out in Article 8 of this Agreement as the sole and exclusive remedy for violations.  Arbitrators shall apply appropriate law in rendering decisions based upon claims covered by this section.

Munsky Aff. Ex. D, at 14, ECF No. 21.  Article 8 of the CBA, in turn, outlines the three-step grievance procedure for disputes that arise between SUS and members of the Union.  *Id*. at 8.  At each of the three steps, a representative of the Union meets with a supervisor or manager at SUS to try to resolve the matter informally.  If the dispute is not resolved through this process, "the Union may, within ten (10) days, proceed to binding arbitration."  *Id*.

SUS contends that Brown's discrimination claims are subject to mandatory arbitration in light of the express language in the CBA.  Under the Federal Arbitration Act, private agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Accordingly, when a contract "clearly and unmistakably" requires the parties to arbitrate a dispute, courts will enforce that arbitration agreement.  *14 Penn Plazas LLC v. Pyett*, 556 U.S. 247, 274 (2009).

3

This is true even when the dispute arises from a right created by statute, unless Congress has expressly determined that a judicial forum must be available to secure that right.  *Id.* at 257-58.

The Supreme Court has left open one potential exception to this rule:  When a CBA contains a mandatory arbitration clause for claims that vindicate statute-based rights and the CBA also allows the union to block arbitration of its members' claims, the arbitration clause may be unenforceable.  *See id.* at 273-74.  This is because such a CBA arguably extinguishes its members' statutory rights by denying them the unfettered ability to seek *any* remedy – either judicial or arbitral – for a violation of those rights.  And an agreement to extinguish a party's statutory civil rights is unenforceable; parties cannot overcome Congress's express intention – here, to ensure that the workplace is free from discrimination – by private accord.  *Id.* at 273.

Several district courts have adopted this reasoning and invalidated arbitration clauses when unions have prevented their members from arbitrating statutory discrimination claims.  *See, e.g.*, *de Souza Silva v. Pioneer Janitorial Servs., Inc.*, 777 F. Supp. 2d 198 (D. Mass. 2011); *Morris v. Temco Serv. Indus., Inc.*, No. 09 Civ. 6194, 2010 WL 3291810 (S.D.N.Y. Aug. 12, 2010); *Kravar v. Triangle Servs., Inc.*, No. 06 Civ. 7858, 2009 WL 1392595 (S.D.N.Y. May 19, 2009).  For example, in *Kravar v. Triangle Services, Inc.*, 2009 WL 1392595, the plaintiff filed suit against her employer for retaliation and discrimination on the basis of national origin and disability, in violation of federal and local antidiscrimination laws.  *Id.* at *1. Although the plaintiff's CBA included an arbitration clause that expressly applied to her discrimination claims, she lacked the "unfettered right to demand arbitration" because the Union had the authority to prevent her from pursuing a claim for arbitration.  *Id.* at *1-2.  The court held that because the plaintiff's union precluded her from arbitrating her discrimination claims, the CBA's arbitration provision could not be enforced against her.  *Id.* at *3.  Although the employer

4

argued that it was willing to arbitrate notwithstanding any refusal by the union, the court reasoned that this "confuse[d] the issue."  *Id.* at *4.  The "arbitration provision that the Court must enforce is the one the union and the [employer] entered into, not a hypothetical agreement in which the employer's rather than the union's consent is critical."  *Id*.

I agree with and adopt the *Kravar* court's reasoning.  Thus, although I agree with SUS that the arbitration clause at issue extends to Brown's claims – the CBA specifically commits Title VII claims to arbitration – I find the arbitration clause invalid because it impermissibly operated as a waiver of Brown's statutory antidiscrimination rights.

The CBA states that "if a dispute is not resolved, *the Union may*, within ten (10) days, proceed to binding arbitration."  Munsky Aff. Ex. D. at 8 (emphasis added).  The CBA does not contain a provision allowing members to proceed with arbitration without support from the Union.  Brown attempted to proceed to arbitration regarding his discharge, but the Union refused to bring his claims to arbitration.  Indeed, in a letter to Brown, the Union stated that it would "take no further action" because, "[a]fter consultation with [its] counsel," it "determined that it [could] not prevail in an arbitration contesting [Brown's] separation from employment."  Pl. Aff. App. 5, ECF No. 26.  I thus conclude that the CBA's arbitration provision is unenforceable—at least as against Brown—because it gave the Union exclusive authority to decide whether to pursue Brown's discrimination claims, and the Union in fact denied Brown the opportunity to pursue those claims.[1]  Because the arbitration clause has effectively deprived

---

[1]     Although SUS appears to acknowledge that Brown attempted to pursue arbitration regarding his discharge generally and was blocked by the Union, SUS contends that Brown did not inform the Union that his specific complaint regarding his discharge was discrimination.  However, Brown submitted an affidavit in which he states, "I had informed my union rep[resentative] that as the only male on the night shift[,] I was being subjected to unfair practices while the other two employees, both female[, were] never written up or reprimanded."  Pl. Aff. ¶ 4.  SUS does not contradict this representation, and I conclude that Brown attempted to grieve and bring to arbitration his discrimination claims.  *See Kravar*, 2009 WL 1392595, at *3 (finding that plaintiff's sworn declaration demonstrated that she was precluded from arbitrating her discrimination claims).

Brown of any remedy for his statutory discrimination claims, it is invalid, and I decline to compel arbitration.

B.    *The Motion to Dismiss*

Defendants ask that, if I do not compel arbitration, I dismiss the amended complaint because Brown failed to exhaust his administrative remedies.  On a motion to dismiss, the Court accepts the complaint's factual allegations as true and draws all reasonable inferences in favor of the plaintiff.  *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995).

Before bringing suit in federal court under Title VII, an individual must timely file a charge with the Equal Employment Opportunity Commission ("EEOC") and obtain a right-to-sue letter.  *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001). Such timely "[e]xhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII . . . statutory scheme[] and . . . a precondition to bringing such claims in federal court."  *Id.* (quoting *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982).  In order to timely exhaust administrative remedies, a "Title VII plaintiff must file a charge with the EEOC within 180 days of the violation or, where the plaintiff first files with a state or local equal employment agency, within 300 days of the violation." *Gomes v. Avco Corp.*, 964 F.2d 1330, 1332-33 (2d Cir. 1992); 42 U.S.C. § 2000e-5(e).

Here, Brown alleges that the last discriminatory act committed by SUS occurred on May 24 or May 28, 2010, when he was fired.  Am. Compl. at 20-21.  However, Brown did not file his charge with the New York equal employment agency (the New York State Division of Human Rights) or the EEOC until April 6, 2011, more than 300 days after he was fired.  *Id.* at 4, 21-26.  Because Brown's EEOC charge was not timely filed, his Title VII claims are

administratively unexhausted.  There is no basis for equitable tolling, and his claims are therefore dismissed.[2]

CONCLUSION

For the reasons set forth herein, the motion to compel is denied and the motion to dismiss is granted.

So ordered.

John Gleeson, U.S.D.J.

Dated: July 31, 2012
        Brooklyn, New York

---

[2]      SUS also alleges that Brown's discrimination claims are implausible on their face and asks that I dismiss the amended complaint on that basis.  Because I dismiss on exhaustion grounds, I need not and do not consider the plausibility of the claims.